Stephen BERGER, Rita J. Brody, Robert King, Jr., Marsilia A. Boyle, Catherine C. Stanton, Carol Brownell, Ora Garrett, Julia McDonald, Shari Goldberg, Delores Woodard, and Ralph Annina, Plaintiffs,

v.

Remo J. ACITO, Stephen May, Donald A. Rettaliata, William H. McKeon, Commissioners of the State Board of Elections and Hugh L. Carey, Governor of the State of New York, and Louis J. Lefkowitz, Attorney General of the State of New York, Defendants.

No. 78 Civ. 3789.

United States District Court, S. D. New York.

Sept. 1, 1978.

Gifford, Woody, Carter & Hays, New York City, for plaintiffs; Sheila Maura Kahoe, New York City, of counsel.

James B. Cantwell, Thomas P. Zolezzi, Albany, N. Y., for defendant Commissioners of the State Bd. of Elections.

Louis J. Lefkowitz, Atty. Gen. of the State of New York, New York City, pro se and for defendant Carey; Arnold D. Fleischer, New York City, of counsel.

Fisher & Axenfeld, Brooklyn, N. Y., for intervenors; Harold L. Fisher, Peter J. Kiernan, Andrew S. Fisher, Kenneth K. Fisher, Brooklyn, N. Y., of counsel.

## OPINION

SWEET, District Judge.

This is a memorandum opinion which will constitute findings of fact and conclusions

of law denying an application for a mandatory preliminary injunction by the plaintiffs, including Stephen Berger ("Berger"), who seeks the nomination of the Democratic Party as candidate for the office of State Comptroller. The plaintiffs have requested that the court direct the defendants, members of the New York State Board of Elections ("the Board"), to place Berger's name on the ballot of the Democratic Primary on September 12, 1978 on the grounds that the Board's rulings and the statute pursuant to which they were issued violate rights of due process and equal protection guaranteed the plaintiffs by the United States Constitution. Jurisdiction under 28 U.S.C. §§ 2201 and 2202, 28 U.S.C. § 1343 and 42 U.S.C. §§ 1971 and 1983 is alleged. This court has concluded that the shield of the election laws to protect the sanctity of the democratic process has not been converted by the defendants into an arbitrary and discriminatory sword to defeat Berger's candidacy, as alleged by plaintiffs.

On July 27, 1978 Berger filed with the New York State Board of Elections a designating petition containing approximately 32,300 signatures to have his name placed on the ballot of the Democratic Primary as a candidate for State Comptroller. Thereafter, on July 31, 1978, general objections to the aforesaid nominating petition were filed with the Board by Jeff F. Segall and Jeanette Parasole; specifications of the general objections were filed on or about August 7, 1978. On August 10, 1978 the Board commenced a hearing to review the petitions and the objections thereto. Prior to such

hearing the Board made certain rulings it would follow in determining the validity of the petitions. After approximately five days of hearings approximately 14,300 signatures were invalidated, leaving Berger with an insufficient number of signatures to have his name placed on the ballot. Berger has sought a review of these rulings in the courts of the State of New York. To date the Supreme Court of Albany County and the Appellate Division of the Third Judicial Department have upheld, with but minor modifications, the decision of the Board. On August 30, 1978, the New York State Court of Appeals unanimously denied Berger leave to appeal the decision of the Appellate Division. Berger and certain of those whose signatures were disqualified filed a complaint in this court on August 23, 1978, attacking the constitutionality of the Board's rulings and the statute pursuant to which they were issued.[1]

By order to show cause, also filed August 23, 1978, Berger moved this court for a preliminary injunction to prevent irreparable injury to him arising out of the action of the Board in failing to place his name on the statewide ballot. A brief hearing was held on August 29, 1978 to determine a schedule that would permit Berger to complete his efforts to obtain relief in the state courts. Upon being advised that the Court of Appeals of the State had set August 30 and 31 for a hearing, Berger's application was set down for September 1. At the August 29th hearing the Attorney General's Office represented that if so directed by court order on or before September 5, 1978

---

1. The parties entered into a stipulation for the state court proceedings as to the number of signatures in dispute. At the hearing before this court on Tuesday, August 29, 1978, the parties agreed that such stipulation would also apply here. It provides that approximately 9800 of Berger's signatures are invalid. This concession leaves slightly over 5000 contested signatures from which petitioner must establish the 2509 additional signatures he needs. 1900 of the contested signatures were declared invalid because they were on sheets containing a witness' statement in which the number of signatures affixed to the petition in the witness' presence was crossed out and replaced with a larger number and the alteration was not initialed. 1474 signatures were ruled invalid because the signers either failed to list or incorrectly listed their election district or, where appropriate, their assembly district. 624 signatures were ruled invalid because the signators did not appear on the records of the State Board of Elections as registered Democrats. Of the remaining 1210 contested signatures, 1144 were declared invalid for failure to designate, or incorrectly designating, the ward, county, town or city, where appropriate. An additional 66 signatures were declared invalid because they were dated prior to the first day to sign petitions subsequent to witness' statements, or contained an incomplete date.

the Board would have sufficient time to place Berger's name on the ballot for the primary election to be held September 12. At the September 1st hearing the objector's motion to intervene was granted, there having been a showing of their interest to defeat an effort to overturn the rulings of the Board.

Plaintiffs first seek to have §§ 6–130, 6–132, 6–134, 6–136 and 6–154 of the New York State Election Law declared unconstitutional. Plaintiffs assert that these sections, relating to the petitions of candidates, are invalid in that they deny the plaintiffs and others similarly situated who signed and witnessed Berger's petitions their legitimate rights to participate in the nomination and election of candidates for state office. In essence, this is a claim that the Election Law violates the First and Fourteenth Amendments in that it effectively deprives candidates of the ability to be placed on the ballot and therefore bars qualified voters from voting for Berger.

In support of this contention Berger initially refers to no specific provisions of the petition requirements as being prohibitive (e. g. the 20,000 signatures requirement), asserting that the Election Law in its entirety deprives plaintiffs of their constitutional rights. Berger subsequently urges a different position, that the sections requiring a designation of the voter's Assembly District ("AD") and Election District ("ED") or town or village is overbroad and burdensome, particularly in the light of § 5–600(2) of the Election Law.

■ As has been stated by the Supreme Court on numerous occasions, "a citizen has a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction (citations omitted)." *Dunn v. Blumstein,* 405 U.S. 330, 336, 92 S.Ct. 995, 1000, 31 L.Ed.2d 274 (1971). Therefore any restriction on this right depends upon whether the restriction is necessary to further a compelling state interest. *American Party of Texas v. White,* 415 U.S. 767, 780, 94 S.Ct. 1296, 39 L.Ed.2d 744 (1973); *Dunn v. Blumstein, supra,* 405 U.S. at 337, 92 S.Ct. 995; *Williams*

*v. Rhodes,* 393 U.S. 23, 31, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968). In determining whether an election law is constitutional there is "no litmus-paper test for separating those restrictions that are valid from those that are invidious under the Equal Protection Clause. . . . [it is] very much a matter of 'considering the facts and circumstances behind the law, the interests which the State claims to be protecting, and the interests of those who are disadvantaged by the classification' (citation omitted)." *Storer v. Brown,* 415 U.S. 724, 730, 94 S.Ct. 1274, 1279, 39 L.Ed.2d 714 (1973).

In making this determination this court must consider the extent of the restrictions here in question. If the restrictions are so onerous and burdensome that in effect no one could qualify as a candidate, the law would not satisfy constitutional standards. This is not the case. Plaintiff has introduced no facts to support its conclusory allegations that the New York Election Law places an unsurmountable burden, financial or otherwise, on the ability of a candidate to place his name on the ballot via the petition method. Seven candidates for statewide office in recent years have successfully placed their names on the ballot by obtaining the requisite number of petition signatures under the instant state statute. As the Supreme Court stated in *Storer, supra* at 742, 94 S.Ct. at 1285, "[p]ast experience will be a helpful, if not always an unerring, guide, it will be one thing if independent candidates have qualified with regularity and quite a different matter if they have not."

The overall requirements of the statute can be satisfied. There is no evidence before this court to establish that personal wealth or affluent backers are essential ingredients to fulfilling the statutory requirements, regardless of how superficially appealing this unsupported claim may be. Furthermore, the requirements in question are not of the arbitrary nature of the filing fee requirement in *Bullock v. Carter,* 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972).

■ The state has valid interests in the 20,000 signature requirement and those oth-

er requirements necessary to establish the validity and acceptability of each signature and petition. These requirements include (i) that the signatures be officially listed as registered Democrats, (ii) that, where appropriate, the assembly district, election district, ward, county, town and city of each signator be given, (iii) that each petition be signed within a certain time period and dated to indicate such and (iv) that a witness subscribe to, among other things, the number of persons signing each petition. The state has set forth its interests in these requirements; they include: (i) requiring some preliminary showing of a significant modicum of support, (ii) assuring the validity of the signature and protecting against fraud, (iii) assuring party membership of each signator and (iv) regulating the number of candidates on the ballot. Each of these has been recognized by the Supreme Court as a valid interest which a state may seek to protect. *Rosario v. Rockefeller,* 410 U.S. 752, 93 S.Ct. 1245, 36 L.Ed.2d 1 (1973); *Jenness v. Fortson,* 403 U.S. 431, 442, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1970); *Bullock v. Carter, supra,* 405 U.S. at 145, 92 S.Ct. 849; *Dunn v. Blumstein, supra,* 405 U.S. at 345, 92 S.Ct. 995; *Storer v. Brown, supra; Moore v. Ogilvie,* 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1968). Plaintiff has set forth no evidence disputing the existence of these interests or the applicability of the statute's requirements to the interests. It cannot be said that the statute is unconstitutional.

Plaintiffs also allege that the Board's rulings pursuant to the statute were arbitrary and capricious and that they were based on unlawful and irrelevant criteria different from that uniformly applied to other candidates. However, plaintiffs have introduced no evidence in support of these allegations. In order for a signature and petition to be valid the rulings required strict compliance with the statute by all candidates. Such rulings were to protect the interests of the state and were in accord with an interpretation of the statute which numerous New York courts have determined is necessary to protect these interests. *See generally Matter of Berry v. Dodd,* 51 App.Div.2d 1050, 382 N.Y.S.2d 294, aff'd, 38 N.Y.2d 995, 384 N.Y.S.2d 438, 348 N.E.2d 914 (2d Dep't. 1976); *Matter of Sciarra v. Donnelly,* 34 N.Y.2d 970, 360 N.Y.S.2d 410, 318 N.E.2d 602 (1974); *Matter of Rutter v. Coveney,* 38 N.Y.2d 993, 384 N.Y.S.2d 437, 348 N.E.2d 913 (1976); *Matter of Flanagan v. Schwartz,* 40 N.Y.2d 910, 389 N.Y.S.2d 358, 357 N.E.2d 1012 (1976). The Board, the Supreme Court and the Appellate Division have all reviewed in depth the alleged defects in Berger's petitions and have determined that the invalidated signatures and petitions do not substantially comply with the statute.[2] Plaintiffs have made no showing that these ground rules were arbitrary and capricious, or to support the claim that the criteria used as to the petitions in question were purposely and invidiously discriminatory. No proof was introduced showing any intent to discriminate against Berger or that other candidates received different treatment.[3]

**2.** The state has held extensive hearings on the petitions in question. Each signature was reviewed by the Board and each category in which signatures were invalidated was reviewed by the Supreme Court and Appellate Division. Only the category relating to incorrect assembly or election districts resulting from inaccurate voter identification cards was overturned by the Appellate Division. Otherwise, each category was upheld as being validly excludable if not complied with.

**3.** At oral argument it was alleged that discrimination also results from § 6–154(1) of the Election Law, granting each petition presumptive validity, if it appears to bear the requisite number of signatures, authenticated in the proper manner. The allegation is that the plaintiff is denied equal protection from those petition candidates whose petitions are not objected to. However, this is a reasonable method for the state to administer the statute. Presumptive validity is recognized in many areas of the law. Furthermore, the action of the state vis a vis the plaintiff is no different than provided any other candidate. His petitions were originally presumed valid. These petitions were then objected to, as could be those of any other candidate. He was then afforded a full opportunity to prove the validity of such petitions as submitted. Plaintiff was not denied either due process or an equal opportunity.

The only statutory provisions which Berger attacks specifically are those relating to the requirement that the voter's town, county, AD or ED designation be included accurately on the petition. It is claimed that this requirement is overbroad and unnecessary, particularly in the light of § 5–600(2) of the New York Election Law, which requires a county wide registration by name.[4] What must be determined by the court is whether the requirement is arbitrary and capricious and devoid of a compelling state need.

■ The entire state scheme is based upon the importance of local registration, both because of the need to have a requisite number of signatures in one half of the Congressional districts made up of EDs, some of which are not in the same AD, and because the lists of registered voters are made available and published on the basis of ADs, EDs and counties to serve the interest of all those involved, including candidates, canvassers, the Board, and any objectors. This overall plan cannot be said to be arbitrary or capricious in the light of the present showing by Berger, nor can the concomitant requirement of AD, ED, town or village identification. It is within the legislative province to provide for the publication and use of the registration information in a particular fashion and this plan is not made arbitrary and capricious by the provision of a central registrar. Neither is the provision requiring that a witness' attestation be appended to the bottom of each sheet. Such a statement is necessary to provide at least a modicum of proof as to the accuracy of the petition and "shall be accepted for all purposes as the equivalent of an affidavit." New York Election Law, § 6–132(2). Without the witness' initials by any alteration in his attestation, the validity of the whole petition is placed in doubt. *See generally Matter of Nobles v. Grant,* 57 App.Div.2d 600, 394 N.Y.S.2d 20, *aff'd,* 41 N.Y.2d 1048, 396 N.Y.S.2d 180, 364 N.E.2d

844 (2d Dep't. 1977); *Matter of White v. McNab,* 40 N.Y.2d 912, 389 N.Y.S.2d 359, 357 N.E.2d 1014 (1976); *Perfetto v. Doering,* 28 A.D.2d 810, 281 N.Y.S.2d 510 (4th Dep't. 1967).

■ Finally, as the court understands the position of the plaintiffs, it is further urged that the strict compliance with the statute, enforced by the Board, is arbitrary and capricious. Specifically, it appears to be charged that the disqualification of a signatory or witness for a clerical error, that is, the wrong AD, ED, town or address is arbitrary, and that plaintiffs should have been permitted to correct such errors before the Board and after submission of the petitions. Objectors have pointed out that just such corrections could have been offered, if not at the Board level, certainly in the action brought by Berger in the state court. It was there, Objectors argue, that the validity of 20,000 signatures should have been established. What is at stake is an interrelationship of events to permit the exercise of the franchise and to prevent fraud. The Election Law provides the petition with presumptive validity and grants the plaintiffs the time and the opportunity, indeed the statutory mandate, to submit accurate data. After the submission, the election calendar begins to run. To place upon the Board and the Objectors the obligation to challenge in a short period of time potentially indiscriminately collected signatures would destroy the balance sought to be achieved. In arguing for the need for administrative finality, the Board and the Objectors asserted that over 700 challenges have been submitted in this election year. Initially, strict compliance with the statute at the administrative level is not arbitrary but essential to the functioning of the franchise.

There is nothing before this court for it to conclude that the statute was unconstitutional or unconstitutionally applied to the plaintiffs.

---

**4.** This central register is intended to provide a secure back-up to the filing system available for the purposes of the Board at the county level. The legislature has determined that use of the local lists is the appropriate means for a candidate to assure that those signing the petition are registered voters. Counsel for the Board has argued that use of both lists would lead to administrative confusion.

The motion for declaratory relief and a preliminary injunction is denied.

SO ORDERED: