Fuchsberg, J.
(dissenting). My analysis of the underpinnings and consequences of the court’s decision in Matter of Rutter v Coveney (38 NY2d 993) having been set forth "before the fact” when I coauthored the dissent in that case, I find no need to repeat them here. And, out of respect to the general principles of stare decisis and, of course, the possibility that my prognosis would prove wrong, until today I deferred to subsequent reiterations of that pronouncement as prevailing law. Now, after four years of experience in its practical effect on the electoral process of our State, I am convinced that, the majority’s laments notwithstanding, on striking the balance that the doctrine of stare decisis itself permits, I must now vote for a return to the status quo ante. In doing so, I venture some comments on stare decisis as applied in the context of the present case.
But first a few words about the facts, representative as they are of a train of appeals that has followed in the wake of *22 Rutter. Petitioner gathered almost twice the number of signatures needed to designate him a candidate, doing so in petitions whose subscribing witnesses listed their names, addresses, political affiliations and town election districts with accuracy. True, they did not insert the number of their assembly district. But, since the town in which this local election is to be held is entirely within a single assembly district so that each witness must be registered therein, its omission, as conceded at oral argument, in no way could, or did, impede the pursuit of any inquiry — whether launched by the board, an opposing candidate or anyone else — to ferret out either fraud or other reasons that would disqualify the signatories from participating in the electoral process. To add to the unfairness in invalidating his petitions on account of this perfectly "harmless error”, the petitioner, upon inquiry, had been advised by one of the board’s deputy” election commissioners that the assembly district need not be indicated on petitions for a town election. It comes as no surprise, therefore, that, in reversing a direction by the Supreme Court, Erie County, that petitioner’s name be placed on the ballot, the Appellate Division (71 AD2d 1047), unanimously proclaiming its reluctance and acting within its confines as an intermediate appellate court, did so only "under constraint of [Matter of Vari v Hayduk, 42 NY2d 980] * * * and similar holdings [in the Court of Appeals]”.
Stare decisis, to its credit, is a far more subtle and flexible concept than some of those who would give it slavish adherence suggest. Its limitations are inherent, for the stability it espouses must coexist with both the dynamics of an evolving society and the accruing wisdom born of the repeated injustices which a particular ruling has wrought (see Cardozo, The Nature of the Judicial Process [1921 ed], pp 149-152). To that end, its temper partakes more of the malleability of gold than of the rigidity of steel. How else do we narrow the gap between the social philosophy of the present and the law of the past? So Justice Brandéis cautioned that stare decisis does not carry "a universal, inexorable command” (Washington v Dawson & Co., 264 US 219, 238), and Justice Frankfurter wrote of the need to reject the idea of a "disability at self-correction” (Helvering v Hallock, 309 US 106, 121).
Significantly, the increasing flow of instances in which Rutter has been producing frustrating disenfranchisement demonstrates that, in the context of petition-gathering by and *23 among often inexperienced citizens, the hypertechnical strictures which that decision dictates are unrealistic (in addition to Vari, supra, see, e.g., Matter of Morris v Hayduk, 45 NY2d 793; Matter of Klemann v Acito, 45 NY2d 796; Matter of Alper v Hayduk, 45 NY2d 809; Matter of De Bruin v McGee, 40 NY2d 909; Matter of Flanagan v Schwartz, 40 NY2d 910; Matter of Neuberger v Anderson, 64 AD2d 933; Matter of Jones v New York State Bd. of Elections, 64 AD2d 950, revd 45 NY2d 791; Matter of Cox v Wells, 57 AD2d 635; cf. Matter of Berry v Dodd, 38 NY2d 995; Matter of Berger v Acito, 64 AD2d 949; Berger v Acito, 457 F Supp 296).*
The quality of the rights involved in such cases also emphasizes why we should act now. In our society, few prerogatives are more to be valued than the right to vote and to stand for public office. A rule that invalidates petitions for errors that are neither substantial, prejudicial to other candidates, or reasonably detrimental to the ability to promptly ascertain the validity of signatures infringes on that right. In these circumstances, to say the least, the outposts of a fundamental constitutional right indeed are at stake. In such a case, public policy must outweigh stability for stability’s sake.
Even if this were not so, it does not follow from the fact that a legislative enactment is implicated here that there exists, as the majority suggests, a "relative ease of accomplishing statutory change” (at p 18). First, the Legislature may have been ready to throw up its hands when Rutter and Morris rebuffed its attempts at liberalization of the petitioning process. Second and most important, while the Legislature has an interest in the elective process, it is hardly one free of political considerations. After all, most of the members of the Legislature, especially its leaders, are veterans of several reelection campaigns. They are not likely to be unaware that the sterner the rules, the more they are advantaged vis-á-vis independents and other challengers to their continuance in office. Given this inchoate conflict of interest, so often a part and parcel of the legislative office (see, generally, O’Malley v Macejka, 44 NY2d 530, 533-534), unlike the majority I am not prepared to yield paramountcy to the Legislature in the guardianship of the elective process. To the contrary, the greatest contribution of the American judiciary may very well *24 be said to be the protection it has afforded the individual against the inroads of an ever-enlarging government.
Moreover, involved here is a continuing, prospective right in the field of public law rather than one centering on a private interest in property, contract, trust or will entered into in expectation of an unchanging law. In this case, stare decisis, molding itself to the task at hand, would require closer examination of the so-called "binding precedent” (see Pratt v Brown, 3 Wis 603, quoted in Pound and Plucknett, Readings on the History and System of the Common Law, p 275). For here, it seems to me, we are called upon "to look precedent in the teeth and to measure it against the ideals and aspirations of [our] time” (Schaefer, Precedent and Policy, 34 U Chicago L Rev 3, 23).
For all these reasons, I conclude that a pragmatic appreciation of the complexities of the petitioning process and the rights of candidates and voters calls upon us to return to our traditional stance of demanding but substantial compliance with the Election Law (see Matter of Rosen v McNab, 25 NY2d 798; see, generally, Abrahams, New York Election Law, pp 150-152; People v Hobson, 39 NY2d 479, 487-488).
Accordingly, the order of the Appellate Division should be reversed and that of Special Term validating the petition reinstated.

 Even if these reported decisions do not correspond to the visible tip of a submerged iceberg of unreported ones, their very number alone should be enough to give us cause to question Rutter.