OPINION OF THE COURT
Bernard J. Malone, Jr., J.
These proceedings, brought pursuant to Election Law article *440 6, involve three separate attempts to validate and invalidate a nominating petition for a State-wide slate of candidates circulated by the Term Limits Party. All three proceedings (Zobel v New York State Bd. of Elections, index No. 5221-98; Feder v Greco, index No. 5251-98; Feder v Berman, index No. 5305-98) have been consolidated under the above caption (see, CPLR 602) and came before this court for a hearing on September 18, 1998.
In or about July and August 1998, a new political party, operating under the name Term Limits Party,[1] circulated an independent nominating petition nominating individuals for the Offices of Governor, Lieutenant Governor, Comptroller, Attorney-General, and United States Senator.[2] Approximately 30,231 signatures were obtained thereon and the petition was filed with the State Board of Elections (hereinafter the Board) on August 18, 1998. Pursuant to Election Law § 6-154, general and specific objections were filed to challenge the validity of the petitions with the State Board of Elections.
A hearing was held by the Board on September 8 and 9, 1998 and the Board voted unanimously to invalidate the petitions, finding that some 20,732 signatures were invalid, leaving 9,499 valid signatures. Election Law § 6-142 requires that a petition of the type at issue here contain 15,000 valid signatures. Of the 20,732 invalid signatures, 6,435 were invalidated solely on the basis of the signer’s or subscribing witness’ listing an improper town, city or county on the petition.[3]
*441 The parties agree that the threshold issue before this court is whether the Board correctly invalidated 6,435 signatures based upon the placing of an incorrect town name on the petitions by either the signer or the subscribing witness. If those signatures are held valid, the petition will be validated, subject to the other grounds for invalidation raised by petitioners, because it will contain more than the required 15,000 signatures. If they are invalid, the petition cannot be valid because the parties agree that there is no other group of signatures large enough to reach the required 15,000 signatures.[4]
The issue before this court is not a new one. Election Law § 6-140 (1) (a) mandates that a signer or subscribing witness list his/her town or city (except in the case of New York City, then his/her county) after his/her residential address. Several Courts, including the New York Court of Appeals, the Appellate Division, Second Department, and the United States Court of Appeals for the Second Circuit, have all held that this requirement serves a necessary and essential function and does not impose an overly burdensome procedure on the election process (see, Matter of Frome v Board of Elections, 57 NY2d 741, 742; Matter of De Masi v D’Apice, 97 AD2d 526; Schulz v Williams, 44 F3d 48, 57-59). Pursuant to section 6-140 (l)’s requirement of listing the town or city, Courts have previously invalidated petitions where the information listed was not accurate (see, Matter of Frome v Board of Elections, supra; Matter of De Masi v D'Apice, supra). Moreover, although the Governor and Legislature enacted major reforms of the Election Law in 1996, including deletion of the statutory requirements that nominating petitions include both the signer’s and *442 the witness’ ward, assembly district and election district information, the town or city listing requirement was maintained in the amendments (see, L 1996, ch 709, § 5).
Respondent candidates argue that the town or city listing requirement has been made archaic by the advent of the Board’s computerized State-wide election registry. After careful consideration, this court finds that the candidates’ argument that the statute is now unconstitutional básed on the existence of the State-wide computer has no merit. First, the burden resulting from “ ‘reasonable, nondiscriminatory restrictions’ ” is not enough to override “ ‘the State’s important regulatory interests’ ” in having the restrictions in place (Burdick v Takushi, 504 US 428, 434). In addressing the constitutionality of Election Law § 6-140, as was aptly stated by the United States District Court for the Southern District of New York in Berger v Acito (457 F Supp 296, 299), the State’s interests include: “(i) requiring some preliminary showing of a significant modicum of support, (ii) assuring the validity of the signature and protecting against fraud, (iii) assuring party membership of each signature and (iv) regulating the number of candidates on the ballot. Each of these has been recognized by the Supreme Court as a valid interest which a state may seek to protect”. As noted by the Board, these same interests are implicated here and this court believes that it should defer to the Legislature in allowing reasonable restrictions upon the election process (see, e.g., Storer v Brown, 415 US 724).
The requirement of listing the town or city serves the purpose of allowing rapid checks of the petition signatures to occur within the narrow time frames imposed by the Election Law. Notwithstanding the fact that the Board now has a computer database which can search by name of signer or witness to assist it in this process, the database is not available to individual objectors who must still do their checks through the individual county Boards of Elections. In the absence of a correct town or city listing, such checks would be difficult, if not impossible, to complete.[5]
*443 Moreover, as noted by the candidates’ own witness, the errors in the instant petition would have been easily prevented through a more organized and proper collection procedure.[6] In fact that witness, David Belmont, who has managed petition campaigns in all 50 States and the District of Columbia, including six State-wide petition campaigns in New York, testified that, had he been in charge of the petition drive, “[he] would not have done this petition this way — to be sure”. He further testified that he would have used a “cleaning process” that would have easily either prevented the errors from occurring or found and corrected the errors before binding and submission to the Board.
In light of the above, this court is constrained to hold the 6,435 signatures containing an incorrect town or city listing invalid. Despite the arguments set forth by the candidates to hold Election Law § 6-140 unconstitutional, this court finds that the statute does not impose unduly harsh restrictions on those seeking nomination. The court does not reach the remaining issues of: (1) whether the Term Limits Party’s torch emblem is too visually similar to that of the Conservative Party,[7] (2) whether Judith Lowenstein Feder’s consent of substituted candidate was appended to the certificate of filling of vacancy after declination and/or timely filed pursuant to Election Law § 6-148 (5), or (3) whether the Term Limits Party actually *444 intended, during the signature-gathering campaign, to change its candidate for Governor after the petitions were completed.[8], [9]
Accordingly, the independent nominating petition is invalidated because it does not contain the requisite 15,000 signatures. The petition to invalidate is granted and the two petitions to validate are dismissed.

. The Term Limits Party has chosen as its party emblem the words “New York teem limits pabty” encircled by a solid ring and overlaid with a lighted torch.

. Although the original petition listed Ada Rabassa as the party’s ■nominee for Governor, Ms. Rabassa later declined the nomination by filing a certificate of declination with the Board of Elections. The party sought to nominate Judith Lowenstein Feder as its replacement by filing a certificate filling vacancy after declination. The certificate was rejected by the Board because it did not have appended to it Ms. Feder’s consent to the nomination. It is undisputed that the consent form was mailed August 24, 1998 but not received by the Board until August 26, 1998, some two days after the rejection had been issued.

. For example, a signer or subscribing witness signed the petition and lists his/her town of registration as Levittown. Levittown is not a town itself, but rather exists as a municipality within the Town of Hempstead. Petitioners argue that, in some situations, a mailing address or municipality address might not even lead an investigator to the correct town. For example, a resident of Albany County may live in the Town of Guilderland but have a Schenectady mailing address. That mailing address, if used for election petition *441 purposes, would not lead an investigating party to the correct town or even the correct county, as Schenectady is a city and county located wholly outside Albany County. Several other examples were offered at the hearing by Thomas W. Wade, a Commissioner of the Rensselaer County Board of Elections. Wade testified that there are New York voters registered in Rensselaer County who have a Vermont mailing address and voters registered in the Town of Schodack who have mailing addresses that do not correspond to the town in which they live (i.e., Valatie, New York) or correspond to a town located in Columbia County (i.e., North Chatham, New York).

. Of the 30,231 signatures collected, 6,435 were held invalid due to the wrong town/city of the signer and/or subscribing witness, 1,729 were the work-product of disqualified subscribing witnesses, approximately 2,400 were invalidated as being altered but uninitiated, and most of the approximately 10,163 remaining were invalidated because the signer was unregistered. A scattering were invalidated because the signature was illegible and incapable of being validated. The respondents admit that there is no argument for validating the signature groups not affected by the wrong town or city invalidation.

. John A. Flicker, supervisor of data processing at the Board, testified at the hearing that the Board’s computer database voter registration record for each registered voter in the State, which information is supplied by each county Board of Elections, contains data fields for the entry of at least 15 pieces of information including county, last name, first name, middle initial, suffix, address, secondary address, party, city, State, zip code, town, ward, gender, and congressional, senatorial and assembly district. It does not contain a data field for the village of the voter.

. One need only look to page 00001 of 02399 pages of the nominating petition to find an example of the over-all sloppiness of the collection effort. On that first page, 8 of 12 signatures were ruled invalid because the wrong town or city was listed or the signer was not registered. Moreover, without respect to grounds for invalidation of specific signers’ signatures, all 12 signatures on page 00001 required invalidation because the subscribing witness entered “West Islip” as his town or city of registration. West Islip is neither a town nor a city, but rather, is an unincorporated community in the Town of Islip and County of Suffolk.

. Under the precedent offered by petitioners, particularly Matter of McCarthy v Lawley (64 Misc 2d 13, mod 35 AD2d 126, affd 27 NY2d 754), the central question would appear to be whether the use of a torch by the Term Limits Party could create visual confusion with the torch symbol used by the Conservative Party.

. The court does not reach respondent candidates’ argument that 729 signatures were improperly invalidated on the basis that the signers had not updated their addresses with their local Boards of Elections. Although this court does not reach this issue, it notes that a recent Third Department case, Matter of Robelotto v Burch (242 AD2d 397), appears to be controlling and would favor the candidates’ position.

. Petitioners abandoned their challenge to the signature distributions requirement pursuant to Election Law § 6-142 (1) at the hearing.