QUEENS COUNTY REPUBLICAN COMMITTEE, by Serphin R. MALTESE, Chairman, Perry S. Reich, and Stacey Kaplan–Villa, Plaintiffs,

v.

NEW YORK STATE BOARD OF ELECTIONS, New York State Attorney General, Gary L. Ackerman and Gerald S. Scharfman, Defendants.

No. 02CV4836(ADS)(ETB).

United States District Court, E.D. New York.

Sept. 21, 2002.

---

Schapiro & Reich, Attorneys for the Plaintiffs Perry S. Reich, Esq. and Stacey Kaplan–Villa, Lindenhurst, NY, By: Perry S. Reich, Esq., of Counsel.

Bee, Eisman & Ready, Attorneys for the Plaintiff Queens County Republican Committee, Mineola, NY, By: Peter Bee, Esq., of Counsel.

New York State Board of Elections, Albany, NY, By: Special Counsel Todd D. Valentine.

New York State Attorney General, Mineola, NY, By: Assistant Attorney General Ralph Pernick.

Emanuel R. Gold, Esq., Attorney for the Defendants Gary L. Ackerman and Gerald S. Scharfman, Forest Hills, NY.

## MEMORANDUM OF DECISION & ORDER

SPATT, District Judge.

This case presents the following issue: can the State of New York, consistent with the First Amendment to the United States Constitution, allow a non-party member to object to a candidate of another party appearing on the ballot in a primary election, on the ground that the candidate failed to meet the ballot access requirements?

Presently before the Court is a motion for a preliminary injunction, by the plaintiffs the Queens County Republican Committee, Perry S. Reich ("Reich") and Stacy Kaplan–Villa ("Kaplan–Villa") (collectively, the "plaintiffs"), to restrain the defendant the New York State Board of Elections (the "State Board of Elections") from printing any ballots for the 2002 general election for Member of the United States House of Representatives from New York's Fifth Congressional District, unless Reich's name appears on the ballot as the candidate of the Republican Party. This opinion sets forth the Court's findings of fact and conclusions of law in accordance with Rule 52 of the Federal Rules of Civil Procedure.

## I. BACKGROUND

### A. The Parties

#### 1. The Plaintiffs

The Queens County Republican Committee is an unincorporated association established pursuant to Article 2 of the New York Election Law (the "Election Law"). Serphin R. Maltese is the Chairman of that committee. Reich is a duly enrolled

member of the Republican Party and was the only candidate of the Republican Party who submitted a designating petition to gain access to the primary ballot in the 2002 election for Member of the United States House of Representatives from New York's Fifth Congressional District. Kaplan–Villa is a duly enrolled member of the Republican Party who circulated designating petitions for Reich as the Republican Party candidate for the Fifth Congressional District.

#### 2. The Defendants

The State Board of Elections is an agency created pursuant to the Election Law to administer elections and rule on the validity of challenges to designating petitions where the geographic area of public office covers more than one county outside of the City of New York. The Fifth Congressional District qualifies as such an office. The Attorney General of the State of New York (the "Attorney General") is responsible for defending the constitutionality of New York statutes and the conduct of public officials. Gary L. Ackerman ("Ackerman") is an enrolled Democrat and is the incumbent in the United States House of Representatives from New York's Fifth Congressional District. Gerald S. Scharfman ("Scharfman") is an enrolled Democrat.

### B. The Facts

New York law limits primary election ballot access to those prospective candidates for Congress who submit petitions that bear valid signatures of at least 5% of the voters resident in the election district and enrolled in the party whose nomination they seek or 1,250 such voters, whichever is less. As a result of the reapportionment in 2002, the Fifth Congressional District lines were redrawn to exclude parts of Suffolk County and to encompass only parts of the North Shore of Queens and Nassau counties.

On June 17, 2002, a three judge panel led by Chief Judge John M. Walker of the United States Court of Appeals for the Second Circuit, enjoined the petitioning process in New York State, which was scheduled to begin the next day, because the redistricting plan enacted by the New York State Legislature had not been pre-cleared by the United States Department of Justice. *Rodriguez v. Pataki*, No. 02–618, 2002 WL 1334733, *1 (S.D.N.Y. June 17, 2002) (three-judge court). On June 25, 2002, after the Department of Justice pre-cleared the redistricting plan, the same three judge panel dissolved the injunction holding up the petitioning process. *Rodriguez v. Pataki*, No. 02–618, 2002 WL 1733676, *1 (S.D.N.Y. July 25, 2002) (three-judge court).

After the injunction was dissolved, Reich and Kaplan–Villa began to circulate petitions seeking the requisite number of signatures to have Reich's name appear on the primary election ballot. Reich and Kaplan–Villa experienced difficulties obtaining signatures as a result of the limited number of Republican petition carriers available. Despite the difficulties, Reich submitted a designating petition containing "some 1,477 signatures" to the State Board of Elections. Acting on behalf of Ackerman, Scharfman submitted an objection to Reich's designating petition. Most of the objections related to the alleged inability to read certain signatures. Other objections involved challenges to the residence of subscribing witnesses or signers and the use of a married woman's name.

Shortly thereafter, Ackerman and Scharfman filed an action in New York Supreme Court, Albany County ("New York Supreme Court") seeking to invalidate Reich's designating petition. Reich then filed a cross-claim to validate his petition. Thereafter, on August 13, 2002, the State Board of Elections determined that the Reich petition contained approximately 1,066 valid signatures. The State Board of Elections therefore sustained the objection by Scharfman to the Reich petition. Because Reich failed to secure the requisite number of signatures, namely 1,250, the State Board of Elections found his petition invalid thereby denying him access to the primary election.

On August 14, 2002, in New York Supreme Court, Reich withdrew his cross-claim to validate the petition and sought to gain access to the primary ballot through a petition for opportunity to ballot (petition for write-in voting) under Election Law § 6–164. On August 15, 2002, the New York Supreme Court denied Reich's application for an opportunity to ballot because Reich failed to obtain the required 1,250 signatures.

On September 4, 2002, the plaintiffs filed this complaint in the Eastern District of New York. The complaint seeks declaratory, injunctive and monetary relief in three claims. The first claim alleges that Election Law § 6–154 entitled "Nominations and designations; objections to" violates the First and Fourteenth Amendments to the United States Constitution. The second claim alleges that the different standards for determining the validity of a signature used by the New York City Board of Elections (the "City Board of Elections") and the State Board of Elections denied Reich equal protection under the law. In the third claim, the plaintiffs request that the Court decrease the signature requirement contained in Election Law § 6–136(2) from 1,250 to 1,000 for Congressional candidates in the Fifth Congressional District in 2002.

On September 5, 2002, the plaintiffs moved for a preliminary injunction restraining the State Board of Elections from printing any ballots for the 2002 general election for Member of the United States House of Representatives from

New York's Fifth Congressional District, unless Reich's name appears on the ballot as the candidate of the Republican Party. In support of the preliminary injunction, the plaintiffs raise three arguments: (1) that Election Laws §§ 6–154 and 16–102 violate the First and Fourteenth Amendments to the United States Constitution; (2) that the different standards for determining the validity of a signature used by the City Board of Elections and the State Board of Elections denied Reich equal protection under the law; and (3) that the Court should decrease the signature requirement contained in Election Law § 6–136(2)(g) from 1,250 to 1,000 for Congressional candidates in the Fifth Congressional District in 2002, because Reich experienced difficulty in obtaining the requisite signatures due to the shortened petitioning period, the change in the boundaries of the Congressional districts and his inability to secure enough petition carriers.

On September 13, 2002, all of the parties in the action, except the State Board of Elections, appeared before this Court. At that time, the plaintiffs withdrew their claim based upon the alleged violation of the Equal Protection Clause. Also, counsel for the plaintiffs stated that their main argument in support of their claim for a preliminary injunction rests upon *California Democratic Party v. Jones*, 530 U.S. 567, 120 S.Ct. 2402, 147 L.Ed.2d 502 (2000), which purportedly instructs that Election Law §§ 6–154 and 16–102 violate the First and Fourteenth Amendments to the United States Constitution. All parties agreed that the determination of the request for the preliminary injunction is solely a question of law and that no evidentiary hearing is required.

## II. DISCUSSION

### A. The Willful Delay

The Second Circuit has recognized that under certain circumstances involving elec-tion cases, a court should not entertain a willfully delayed eleventh hour motion for preliminary injunctive relief. *See Hirschfeld v. Bd. of Elec. in the City of New York*, 984 F.2d 35, 39 (2d Cir.1993). The Attorney General contends that the injunctive relief in this case should be denied on the ground that the plaintiffs' delayed an unconscionable period of time before seeking such relief. The Court disagrees.

On August 15, 2002, the New York Supreme Court denied Reich's application to gain access to the 2002 primary ballot. Thereafter, on September 5, 2002, Reich and the Queens County Republican Committee moved for injunctive relief in this Court seeking to place Reich's name on the ballot for the general election. This three week period does not constitute an unreasonable period of time in light of the scheduled general election on November 5, 2002. Accordingly, the Court finds that the plaintiffs did not willfully delay seeking injunctive relief and now turns to the merits of the motion for a preliminary injunction.

### B. The Standard of Review

Ordinarily, a preliminary injunction may be granted when the party seeking the injunction establishes that (1) absent injunctive relief, she will suffer irreparable injury and (2) either (a) a likelihood of success on the merits, or (b) that there are sufficiently serious questions going to the merits of the claims to make them a fair ground for litigation, and a balance of hardships tips decidedly in her favor. *Wright v. Giuliani*, 230 F.3d 543, 547 (2d Cir.2000). *Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir.1999). If, as here, "the moving party seeks a preliminary injunction that will affect government action taken in the public interest pursuant to a statutory or regulatory scheme, the injunction will be

granted only if the moving party meets the more rigorous likelihood-of-success standard." *No Spray Coalition, Inc. v. City of N.Y.*, 252 F.3d 148, 150 (2d Cir. 2001) (*per curiam*) (internal quotation marks omitted); *see, e.g., Rockefeller v. Powers*, 74 F.3d 1367, 1376–77 (2d Cir. 1995) (applying the more rigorous standard of preliminary relief in the context of candidate ballot access in a primary election). Further, when such an injunction against the government "will alter rather than maintain the status quo, the movant must show ... [a] substantial likelihood of success." *No Spray Coalition*, 252 F.3d at 150 (internal quotation marks omitted).

### 1. As to the Irreparable Injury

■ The plaintiffs contend that Reich's name should appear as the candidate of the Republican Party on the ballot for the 2002 general election for United States Representative in New York's Fifth Congressional District. The plaintiffs have established irreparable injury. If Reich's name legitimately belongs on the ballot and it does not appear, then no monetary award will redress the injury to Reich or the Queens County Republican Committee. *See JSG Trading Corp. v. Tray–Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir.1990) ("Irreparable Injury is one that cannot be redressed through a monetary award.").

### 2. As to the Substantial Likelihood of Success

The plaintiffs raise two arguments to support a substantial likelihood of success on the merits: (1) that Election Laws §§ 6–154 and 16–102 violate the First and Fourteenth Amendments to the United States Constitution; and (2) that the Court should decrease the signature requirement contained in Election Law § 6–136(2) from 1,250 to 1,000 for Congressional candidates in the Fifth Congressional District because Reich experienced difficulty in obtaining the requisite signatures due to the delay in the petitioning period, the change in the boundaries of the Congressional districts and the inability to secure enough carriers. Before addressing each argument, the Court will review the pertinent provisions of the Election Law.

### a. The New York Election Law

Article 6 of the Election Law provides for the nomination and designation of candidates for election to public office. N.Y. Elec. Law § 6–100. All party nominations of candidates for Member of the United States House of Representatives in New York's Congressional Districts must be made at the primary election. *See* N.Y. Elec. Law § 6–110. A candidate gains access to the ballot in a primary election by filing a designating petition. N.Y. Elec. Law § 6–118. *See also Lerman v. Bd. of Elec. in City of New York*, 232 F.3d 135, 139 (2d Cir.2000) (stating that New York law requires a candidate to file a designating petition to have her name appear on the primary election ballot); *Golkin v. Abrams*, 803 F.2d 55, 56 (2d Cir.1986) (same).

A designating petition must contain, among other things, the requisite number of signatures from enrolled party members in a specified format. N.Y. Elec. Law §§ 6–130, 6–132, 6–134, 6–136. For Representative in New York's Congressional Districts, the designating petition must contain either 5% of voters resident in the election district and enrolled in the party whose nomination they seek, or 1,250 such voters, whichever is less. N.Y. Elec. Law § 6–136(2)(g). If only one designating petition is filed, no primary election need be held, and the candidate is deemed nominated. N.Y. Elec. Law § 6–160.2 ("All persons designated for uncontested offices or positions at a primary election shall be

deemed nominated or elected thereto, as the case may be, without balloting.").

Another method for a candidate to gain access to the primary ballot in New York is by a petition for opportunity to ballot. *See* N.Y. Elec. Law § 6–164. When a candidate files a valid petition for opportunity to ballot, which is essentially a petition for write-in voting, it turns an uncontested primary election into a contested one. *Id.* A valid petition for opportunity to ballot requires that the signatures equal in number those required for a designating petition submitted by a named candidate for the office at issue. *See* N.Y. Elec. Law §§ 6–136.2, 6–164. For Representative in New York's Congressional Districts, the required number of signatures equals the number required for designating petitions.

New York law allows voters to challenge a designating petition on the ground that it is invalid. Election Laws §§ 6–154 and 16–102—which permit such challenges—are the subject of the present motion. Election Law § 6–154 provides in pertinent part that:

1. Any petition filed with the officer or board charged with the duty of receiving it shall be presumptively valid if it is in proper form and appears to bear the requisite number of signatures, authenticated in a manner prescribed by this chapter.

2. Written objections to any ... designating petition ... may be filed by any voter registered to vote for such public office.... When such an objection is filed, specifications of the grounds of the objections shall be filed within six days thereafter with the same officer or board.... Each such officer or board is hereby empowered to make rules in reference to the filing and disposition of such petition, certificate, objections and specifications.

N.Y. Elec. Law § 6–154(1)–(2). Election Law § 16–102 provides in relevant part that:

The nomination or designation of any candidate for any public office ... may be contested in a proceeding instituted in the supreme court by any aggrieved candidate ... or by a person who shall have filed objections [*see* Election Law § 6–154] ... except that the chairman of a party committee may not bring a proceeding with respect to a designation or the holding of an otherwise uncontested primary.

N.Y. Elec. Law § 16–102(1).

In essence, Election Laws §§ 6–154 and 16–102 permit a non-party member to object to a candidate of another party appearing on the primary ballot on the ground that she failed to meet the ballot access requirements. In this case, a non-party member, namely Scharfman, an enrolled Democrat, challenged Reich's designating petition. Scharfman's objection to Reich's petition was sustained. Because there were no other Republican candidates who submitted designating petitions, the Republican Party is presently left without a candidate for the 2002 general election for New York's Fifth Congressional District. At the crux of this case, the plaintiffs argue that allowing non-party members to challenge the designating petitions of another party's candidate is unconstitutional.

**b. The Constitutional Challenge**

 In analyzing the constitutionality of a state election law, a court must:

[B]alance the regulation's burden on the First and Fourteenth Amendment rights of voters against the state interests advanced by the regulation, taking into consideration the extent to which the burden is necessary to the advancement of those interests. When the regulation

severely restricts the relevant rights [*i.e.*, speech, association or right to vote], it must be narrowly drawn to advance a compelling state interest, but where the regulation imposes only reasonable, nondiscriminatory restrictions on those rights, the State's important regulatory interests are generally sufficient to justify the restrictions. In assessing the burden imposed by the challenged regulation, [a court] view[s] the regulation in light of the state's overall election scheme.

*Prestia v. O'Connor*, 178 F.3d 86, 88 (2d Cir.1999) (internal quotation marks and citations omitted). *See also Lerman*, 232 F.3d at 145. The Court first identifies what burden, if any, that Election Laws §§ 6–154 and 16–102 place on the right to speech, association and vote. If the laws severely restrict those rights, they must be narrowly tailored to advance a compelling state interest. However, if the laws impose only reasonable, nondiscriminatory restrictions on those rights, the state's important regulatory interests are generally sufficient to justify the restrictions.

■ The plaintiffs argue that Election Laws §§ 6–154 and 16–102 impose a severe burden on First Amendment rights because they allow moneyed candidates of an opposing party "to tie down" another candidate in administrative and judicial proceedings and could compel a candidate to produce witnesses at a distant location to justify the candidacy. The defendants respond that the challenged provisions ensure electoral accuracy and do not favor moneyed candidates. Also, the defendants contend that there is no evidence to support the plaintiffs' argument that a candidate could be compelled to produce witnesses in a distant location.

The Court finds that the burdens imposed on the Constitutional rights at issue by Election Laws §§ 6–154 and 16–102 are minimal. The argument that a candidate could be compelled to produce witnesses in a distant location holds little weight because challenges to the validity of signatures in a designating petition can be quicky verified with New York's present signature imaging technology. *See Lerman*, 232 F.3d at 150 (stating that the signature of each registered voter in "New York's sixty-two counties may be verified rather easily against a digitized version of that voter's signature on file with the local boards of elections in each county and the city of New York."). Also, the contention that a moneyed candidate could tie down another candidate in administrative and judicial proceedings is conclusory and unsupported in this case. *See Berger v. Acito*, 457 F.Supp. 296, 299 (S.D.N.Y.1978) (stating that there was insufficient evidence to establish that personal wealth or affluent backer were essential ingredients in fulfilling the statutory requirements under Election Law § 6–154, among others). Finally, any burden in this regard is totally non-discriminatory-all parties—major and minor alike—may challenge the validity of a designating petition. *See Ostrom v. O'Hare*, 160 F.Supp.2d 486, 494 (E.D.N.Y. 2001) (noting that the fact that the challenged election law applied equally to all candidates was a factor in finding the burden imposed not severe).

In this case, the state interest involves the requirement that each candidate make a preliminary showing of a significant modicum of support before having her name placed on the primary ballot. This is an important state interest because it prevents, among other things, confusion, deception and frustration of the democratic process in the voting apparatus. *Prestia*, 178 F.3d at 88 ("States have an important interest in 'requiring some preliminary showing of a significant modicum of support' before printing a candidate's name on the ballot, so as to 'avoid[ ] confusion, deception, and even frustration of the dem-

ocratic process at the general election.' ") (quoting *Jenness v. Fortson*, 403 U.S. 431, 442, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971)). *See also Munro v. Socialist Workers Party*, 479 U.S. 189, 194, 107 S.Ct. 533, 93 L.Ed.2d 499 (1986) ("*Jenness* and *American Party* establish with unmistakable clarity that States have an undoubted right to require candidates to make a preliminary showing of substantial support in order to qualify for a place on the ballot . . . .") (internal quotation marks and citation omitted).

The Second Circuit has upheld the constitutionality of the 5%/1,250 signature ballot access requirement under the Election Law as a reasonable requirement that furthers the important state interest in ensuring that a candidate has a significant modicum of support before placing her name on the ballot in a primary election. *Prestia*, 178 F.3d at 88–89. In particular, the Second Circuit has stated that "a requirement that ballot access petitions be signed by at least 5% of the relevant voter pool is generally valid, despite any burden on voter choice that results when such a petition is unable to meet the requirement." *Id.* at 88 (citing *Jenness*, 403 U.S. 431, 442, 91 S.Ct. 1970, 29 L.Ed.2d 554).

Election Laws §§ 6–154 and 16–102 do advance the important state interest of ensuring that a candidate has a significant modicum of support, because non-party challenges assist the state in making sure that a candidate has met the 5%/1,250 signature ballot access requirement. It is important to note that Election Law § 6–154(1), grants a designating petition a presumption of validity. Hypothetically, a petition which appears to bear the requisite number of signatures, even if they are forged signatures or do not otherwise comply with the signature requirement, will be presumed to be valid. Without detection, such a false petition will place a candidate on the ballot. However, non-party challenges deter such deception and assist the state in discovering this purported fraud. At times, only challenges by a non-party will reveal this type of election fraud. As such, the challenged laws are a reasonable requirement that further the important state interest in ensuring that a candidate has a significant valid modicum of support before printing her name on the primary ballot. In the Court's view, a non-party challenge is a necessary component in any fair democratic election process.

In addition, the Court finds that Election Laws §§ 6–154 and 16–102 are nondiscriminatory. First, the laws apply equally to all parties, both major and minor. Second, the laws do not allow a non-party member to alter or influence the views of another political party. Third, the laws do not force a party to associate with other parties. Fourth, the laws do not allow non-party members to determine the nominees of another party. In sum, the laws allow a non-party member to ensure that a candidate has validly, properly and legally complied with the signature ballot access requirement for the primary election. The challenged candidate has either met the lawful requirements or she has not. As such, Election Laws §§ 6–154 and § 16–102 are nondiscriminatory in their content and their enforcement.

Because Election Laws §§ 6–154 and 16–102 are reasonable and nondiscriminatory, New York's important regulatory interest, namely requiring each candidate to show a significant modicum of support, is sufficient to justify the minimal burden imposed by each statute. Even if the challenged laws severely restrict speech, association or right to vote, the laws are narrowly tailored to advance the compelling state interest because they apply evenly to all candidates, pose a minimal burden and do not allow a non-party member to alter the views of another party.

The plaintiffs place great emphasis on *California Democratic Party v. Jones,* 530 U.S. 567, 120 S.Ct. 2402, 147 L.Ed.2d 502 (2000) and contend that the ruling in *Jones* commands this Court to strike down Election Laws §§ 6–154 and 16–102 as being in violation of the First Amendment. In particular, the plaintiffs argue that the provisions in Election Laws §§ 6–154 and 16–102 empower non-party members to have a voice in another party's affairs. The Court disagrees.

*Jones* involved a "blanket" primary in California. 530 U.S. at 569, 120 S.Ct. at 2405. A "blanket" primary allows voters "to participate in the primaries of more than one party on a single occasion, selecting the primary they wish to vote in with respect to each individual elective office." 530 U.S. at 577 n. 8, 120 S.Ct. at 2410. The purpose of the "blanket" primary "was to favor nominees with 'moderate' positions .... [by encouraging] candidates— and officeholders who hope to be renominated—to curry favor with persons whose views are more 'centrist' than those of the party base." 530 U.S. at 580, 120 S.Ct. at 2411. The Supreme Court held that the "blanket" primary violates political parties' First Amendment right of association because it "forces political parties to associate with—to have their nominees, and hence their positions, determined by— those who, at best, have refused to affiliate with the party, and, at worst, have expressly affiliated with a rival." 530 U.S. at 577, 120 S.Ct. at 2409.

The rule in *Jones* is distinguished from this factual scenerio. First, Election Laws §§ 6–154 and 16–102 do not allow a non-party member to have a voice in another party's affairs. In particular, the challenged election laws: (1) do not force political parties to associate with other parties; (2) do not alter the positions of another party and, most significantly (3) do not allow other parties to determine the nomi-

nees of another party. It strains credulity to believe that a political party or a candidate will alter their voice or position on political issues for fear that a non-party member will challenge them for failure to adhere to the 5%/1,250 signature ballot access requirement.

Second, unlike in *Jones* where the state interest was not compelling, *see* 530 U.S. at 585, 120 S.Ct. at 2414, Election Laws §§ 6–154 and 16–102 advance the important state interest of ensuring that a candidate has a valid, significant modicum of support before she is entitled to have her name appear on the primary ballot. Permitting a registered Democrat to vote in a Republican primary and attempt to determine the outcome is a much different act than permitting a Democrat to object to a filed petition. Clearly, the Court finds the rule in *Jones* inapplicable to this case.

The inherent flaw in the plaintiffs' position was highlighted at oral argument:

> The Court: I'm talking not literally, but figuratively, that if I say or the court determines, whatever it be whether Circuit or Supreme Court ultimately, that a nonenrollee cannot object to a petition where there are 1,250 forged signatures, that would be the case if that were the law, not this case, but a hypothetical case, correct?
>
> Mr. Bee: Certainly, your Honor is reading—
>
> The Court: I could go out and sign 1,250 names and file that. And nobody could object other than a member of my party.
>
> Mr. Bee: Certainly you Honor is free to, first, choose to limit your decision to the facts of this case in which the allegations were illegibility. However, to answer your question directly, yes, sir. That is our position, because it is left to the enrollees of the party to decide whether their nominee, their standard bearer has been selected by a process which is sat-

isfactory to them or not. The state's role and the state's interest in determining that an adequate showing of interest has been made is found in two facts. First, the statute which makes the petition presumptively valid. And, secondly, the right of party members to object. If party members are satisfied by the choice, if party members are willing to live with the petition, whether perfect or imperfect, if party members, through the state statute making the petition presumptively valid now have a standard bearer with which they are willing to live, then it should not be the opportunity and the choice of a nonenrollee of the party to limit and to alter or to delete that choice.

Transcript at 26–27, *Queens County Republican Committee v. New York State Bd. of Elec.*, No. 02–4836 (E.D.N.Y. Sept. 13, 2002).

The Court respectfully disagrees with this rationale. In the first instance, the plaintiffs' position, which contends that New York State is powerless to prevent fraud in the election process if the party members of the fraudulent candidate do not object, conflicts directly with well-established precedent. *See Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 364–65, 117 S.Ct. 1364, 1371, 137 L.Ed.2d 589 (1997) ("States certainly have an interest in protecting the integrity, fairness, and efficiency of their ballots and election processes as means for electing public officials.") (citing *Bullock v. Carter*, 405 U.S. 134, 145, 92 S.Ct. 849, 856–57, 31 L.Ed.2d 92 (1972) (stating that a State may prevent "frivolous or fraudulent candidacies") (citing *Jenness*, 403 U.S. at 442, 91 S.Ct. at 1976); *Norman v. Reed*, 502 U.S. 279, 290, 112 S.Ct. 698, 706, 116 L.Ed.2d 711 (1992)) (stating that States have an interest in preventing "misrepresentation").

In addition, the statutory presumption that a filed petition is presumed valid does not protect the state's interest in ensuring that a valid petition has been filed. Rather, the presumption makes it easier for candidates to avoid the lawful requirements or submit fraudulent petitions because, initially, the state is not required to look closely at each petition. To permit only party members to object to their own candidates allows parties to avoid the signature ballot access requirements when it conveniences them to do so.

Based upon the foregoing, the Court finds that the statutory provisions, permitting a non-party member to object to a candidate of another party in a primary election on the ground that the candidate failed to meet the ballot access requirements, under Election Laws §§ 6–154 and 6–102 do not violate the Constitutional freedoms of speech or association protected by the First and Fourteenth Amendments.

### c. The Reduction in Signatures

■ The plaintiffs also contend that the Court should decrease the signature requirement contained in Election Law § 6–136(2)(g) for Congressional candidates in the Fifth Congressional District in 2002 from 1,250 to 1,000. The reasons for this unusual request are that Reich had difficulty in obtaining the requisite signatures due to the shortened petitioning period, the change in the boundaries of the Congressional districts and his inability to secure enough petition carriers.

In *Rodriguez v. Pataki*, No. 02–618, 2002 WL 1733676 (S.D.N.Y. July 25, 2002), Chief Judge John M. Walker, leading a three panel court, rejected a motion for injunctive relief to reduce the number of signatures required for ballot access for the 2002 Congressional election from 1,250 to 1,000. *Id.* at *1. Judge Walker noted

that the delay in the petitioning period was only 8 days and that candidates had 29 days to conduct the petitioning process. *Id.* at \*1–2. Also, he cited to *Prestia v. O'Connor*, 178 F.3d 86 (2d Cir.1999) for the principle that "the 5%/1,250 signature requirement remains a generally valid regulation that furthers the important state interest of requiring some preliminary showing of a significant modicum of support before a candidate's name will be placed on the ballot." *Id.* at \*2. Judge Walker then explained that, even assuming that *Prestia's* reasoning was limited to a 30 day petitioning period, "it cannot be said, on the evidence presented on this motion, that the reduction of that period by one day so increases the burden on collecting signatures that the number of signatures is rendered unconstitutional." *Id.* at \*3.

The Court finds that the plaintiffs have failed to establish any reason to decrease the signature requirement contained in Election Law § 6–136(2)(g) from 1,250 to 1,000 for Congressional candidates in the Fifth Congressional District. The plaintiffs' reasons for the reduction—delay in the petitioning period, accurate books unavailable and petition carriers on vacation when school let out are conclusory, and, in any event non-availing. Further, the Court notes that there are in excess of 43,000 registered Republicans in the Fifth Congressional District. As such, to obtain the required 1,250 signatures was not an unreasonable task. It is regrettable that there will not be a Republican candidate for the Fifth Congressional seat in the 2002 election. The fault, if there be any, lies, not in the political affiliation of the objectant, but in the failure to file the requisite number of valid signatures.

The Court finds that the plaintiffs have failed to establish a likelihood of success on their claims in support of the motion for a preliminary injunction.

### III. CONCLUSION

Based upon the foregoing, it is hereby

**ORDERED**, that the motion by the plaintiffs for a preliminary injunction restraining the defendant the New York State Board of Elections from printing any ballots for the 2002 general election for Member of the United States House of Representatives from New York's Fifth Congressional District, unless Perry S. Reich's name appears on the ballot as the candidate of the Republican Party, is denied for failure to establish a likelihood of success on the merits.

**SO ORDERED.**